IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| OCEAN MAMMAL INSTITUTE, ET AL., | ) ) ) | CIVIL NO. 07-00254 DAE-LEK |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| ROBERT M. GATES, ETC., ET AL., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION TO COMPEL COMPLETION OF
<u>ADMINISTRATIVE RECORD, FILED MARCH 4, 2008</u>**

<u>INTRODUCTION</u>

Plaintiffs Ocean Mammal Institute, Animal Welfare Institute, Kahea, Center for Biological Diversity, and Surfrider Foundation Kauai Chapter (collectively "Plaintiffs") filed the instant action on May 16, 2007.  Plaintiffs challenge the Navy's proposal to conduct up to twelve Undersea Warfare Exercises ("USWEX"), which utilize high-intensity, mid-frequency active ("MFA") sonar in Hawaiian waters from 2007 to 2009.  They argue that the USWEX have potentially fatal effects on endangered whales and other marine life.  Plaintiffs allege that the Navy and the National Marine Fisheries Service ("NMFS") violated the National Environmental Protection Act ("NEPA"), the Endangered Species Act ("ESA"), the Coastal Zone Management Act ("CZMA"), and the National Marine Sanctuaries Act ("NMSA").  The Navy

allegedly issued a Finding of No Significant Impact ("FONSI") without conducting an adequate review and in reliance on a faulty Environmental Assessment ("EA").  NMFS issued a Biological Opinion ("BiOp") for the USWEX, determining that they were unlikely to jeopardize endangered species.  It also issued an Incidental Take Statement, authorizing up to 11,299 "takes" of endangered whales each year.[1]

Specifically, Plaintiffs contend that:

> (1) the Navy failed to provide NEPA required public notice and opportunity to comment on the First EA; (2) the Navy's EAs are substantively flawed and inadequate; (3) the Navy must prepare an Environmental Impact Statement ("EIS"); (4) NMFS' First BiOp was inadequate; (5) the Navy ignored mandatory consistency procedures under the CZMA; and (6) the Navy's use of MFA sonar is not exempt from the NMSA consultation requirement.

[Order Granting in Part and Denying in Part Pltfs.' Motion for Preliminary Injunction; and Order Setting Injunction, filed Feb. 29, 2008 ("Preliminary Injunction Order") at 9.]  The merits of Plaintiffs' claims will be decided based on the review of the administrative records underlying the agencies' decisions.  On February 14, 2008, Defendants Robert M. Gates, Secretary of Defense, Donald C. Winter, Secretary of the Navy, Carlos M. Gutierrez, Secretary of Commerce, and William T. Hogarth, Assistant Administrator for Fisheries of the National Marine

---

[1] The ESA defines "take" as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct."  16 U.S.C. § 1532(19).

Fisheries Service, National Oceanic and Atmospheric
Administration (collectively "Defendants") filed the purported
administrative records underlying NMFS's ESA § 7(a)(2)
consultation ("NMFS AR") and the Navy's decision to conduct the
USWEXs ("Navy AR").

Plaintiffs filed a motion for preliminary injunction on
August 22, 2007 which was granted in part and denied in part, and
the order setting injunction was entered on February 29, 2008.[2]

The parties filed a Stipulation for Protective Order on
January 23, 2008 and the district judge entered the Protective
Order on January 24, 2008.

## I.   **Plaintiffs' Motion**.

Plaintiffs filed the instant Motion to Compel
Completion of Administrative Records ("Motion") on March 4, 2008.
Plaintiffs state that, "[b]ased on plaintiffs' counsel's
experience, an administrative record for an agency action such as
either of these typically will contain hundreds, if not thousands
of individual documents, and will total thousands of pages of
material, including drafts, emails, internal memoranda, notes of
meetings and telephone conversations, and correspondence." [Mem.
in Supp. of Motion at 2.]  The NMFS AR, however, only consists of
twenty three documents, seventeen of which Defendants withheld

---

[2]   The district judge modified its order setting injunction
on March 19, 2008.

under claims of privilege.  The six documents included in the NMFS AR are: 1) a draft of the Navy's EA; 2) NMFS's January 2007 BiOp; 3) NMFS's September 2007 BiOp; and three one-page documents.  Plaintiffs argue that the NMFS AR does not provide a reviewable record of NMFS's decision.  Plaintiffs contend that the NMFS AR indicates that NMFS merely rubber stamped the Navy's proposal, but, even if that is the case, Plaintiffs are entitled to the withheld documents because they may reveal additional insight into the process.  In Plaintiffs' view, NMFS is wrongfully withholding documents based on an improper application of the deliberative process privilege, the attorney-client privilege, and the work-product doctrine.

In contrast, the Navy AR consists of 1,154 documents totaling 25,373 pages.  The Navy withheld 483 documents on the basis of privilege.  Plaintiffs, however, argue that the Navy has also misconstrued the scope of the privileges.

Plaintiffs argue that a court reviewing an agency decision under the Administrative Procedures Act ("APA") must consider the full administrative record before the agency. Although the agency generally designates the record, supplementation is sometimes necessary to allow meaningful review.

### A.   NMFS AR

Plaintiffs argue that Defendants have misapplied the

4

deliberative process privilege.  The deliberative process privilege is intended to protect agency decision making, but Plaintiffs contend that it does not apply where the decision making process itself is at issue.  Further, NMFS's BiOps are not a matter of policy; they are merely scientific conclusions which implement policy set by Congress.  Plaintiffs state that courts have repeatedly found that the privilege did not apply to the administrative records of ESA § 7(a)(2) consultations because these involve factual determinations rather than legal or policy decisions.  In particular, Plaintiffs cite Greenpeace v. National Marine Fisheries Service, No. C98-492Z, 2000 WL 151915 (W.D. Wash. Feb. 2, 2000), motion for recon. denied, 198 F.R.D. 540 (W.D. Wash. 2000).

Further, even if the privilege did apply, Defendants failed to specifically designate privileged information and to give precise reasons for the preservation of confidentiality. Finally, the privilege is a qualified one.  A litigant may obtain the deliberative materials if his need for them and the need for accurate fact-finding outweigh the government's interest in nondisclosure.  Plaintiffs argue that the withheld documents are clearly relevant to the APA review and there is no other evidence which can establish how the agencies reached their decision.  The government's role in the litigation favors disclosure.  In addition, Plaintiffs contend that disclosure would not chill

frank policy discussion because NMFS does not make policy determinations in § 7(a)(2) consultations.  Plaintiffs point to Judge King's decision in <u>Greenpeace Foundation v. Mineta</u>, No. 00-00068 (D. Haw. Oct. 27, 2000) (Order Affirming in Part and Reversing in Part Magistrate Judge's Order Denying Plaintiffs' Motion to Strike Claims of Privilege and Granting Defendants' Motion for Protective Order),[3] as reaching the same conclusion in the same situation.  Judge King found <u>Greenpeace v. NMFS</u> to be persuasive and ruled that the deliberative process privilege did not apply to NMFS's section 7 consultation documents.  Finally, Plaintiffs note that the Navy did not claim that the deliberative process privilege applied to any part of the Navy AR.  Plaintiff argues that this is further evidence that NMFS has misapplied the privilege.

Plaintiffs also argue that NMFS has misapplied the attorney-client privilege.  They cite <u>Greenpeace Foundation v. Mineta</u> for the proposition that memoranda discussing drafts of documents which are eventually made available to third parties are not confidential communications, even if the draft comments are made to or by attorneys.  Thus, document numbers 9 and 10 on the NMFS privilege log are not subject to the attorney-client privilege.  [Motion, Decl. of Paul H. Achitoff in Supp. of

---

[3] This order was not published, nor is it available on-line. Plaintiffs included a copy of the order as Exhibit 2 to Paul Achitoff's Declaration.

Pltfs.' Motion to Compel Completion of Admin. Records ("Achitoff Decl.") at Exh. 3 (NMFS Privilege Log).] Document numbers 15, 16, and 21 are emails from Craig Johnson, NMFS's national Section 7 coordinator, to various attorneys. Plaintiffs contend that there is not enough information in the NMFS Privilege Log to determine whether these documents are privileged. Plaintiffs urge the Court to either strike the privilege outright or review the documents *in camera*.

Defendants also withheld document numbers 15, 16, and 21 as attorney work product. Plaintiffs argue that the work product doctrine does not apply in this case because it is a qualified protection from disclosure in discovery which was developed to discourage counsel from taking advantage of opposing counsel's trial preparation. Plaintiffs are not seeking discovery and access to the records would not allow them to take advantage of Defendants' trial preparation. Even if the doctrine applies, the documents referenced on the NMFS Privilege Log are not attorney work product because they were not generated for the litigation. Plaintiffs urge the Court to strike Defendants' claim of privilege outright or, in the alternative, to conduct an *in camera* review.

    B.    **Navy AR**

Plaintiffs argue that the Navy improperly withheld documents based on attorney-client privilege. Plaintiffs assert

7

that the Navy has taken the position that any document touched by an attorney is privileged.  Plaintiffs argue that preexisting documents transferred to an attorney are only privileged if: 1) the information in the document was confidential; 2) the transfer was made to obtain legal advice; and 3) the document was privileged in the client's hands.  Plaintiff argues that the following documents in the Navy's privilege log are not attorney-client privileged because the documents were intended to be disclosed to third parties:

-document nos. 245, 257, 354, 443, 445, 452, 856, 876, 878, 892, 899, 907, 908, 955, 968, 981, 987 997, 999, 1040, and 1051 (drafts of the Navy's EA, or sections thereof);

-document nos. 479, 498, 869, 954, 990, 992, 1003, 1004, 1029, 1048, 1049 (drafts of the Navy's FONSI);

-document nos. 1065, 1067 (drafts of the Navy's Notice of Availability of the EA)

-document nos. 667, 669, 681, 691 (drafts of the Navy's Notice of Intent to prepare a revised EA);

-document nos. 533, 567, 593, 679, 774, 964, 1008, 1115 (drafts of the Navy's CZMA negative determinations; and

-documents nos. 763, 768 (drafts of the Navy's federal consistency determination under the CZMA).

[Mem. in Supp. of Motion at 18-19; see also Exh. 4 to Achitoff Decl. (Excerpts of Navy Privilege Log).]  Pursuant to Greenpeace

8

<u>Foundation v. Mineta</u>, the preliminary drafts are not privileged, even if they contain attorney comments, were drafted by an attorney, or were submitted to an attorney for review.

Plaintiffs notes that the Navy Privilege Log contains communications between the Navy and third parties, for example documents 762, 764, 765, and 766, and Plaintiffs argue that the log does not contain any basis for their protection. Plaintiffs also argue that there are at least two documents withheld under the work product doctrine for which are is no basis for their protection (documents 261 and 420). Document 261 was prepared on June 21, 2006 and document 420 on November 17, 2006. Plaintiffs did not file suit until May 16, 2007, nor had they threatened suit. Since litigation was not imminent, the documents cannot be said to have been prepared in anticipation of litigation. Plaintiff argues that to allow the work product protection based on the fact that the Navy had been sued in the past because of its sonar use and the fact that future suits could be filed would make almost every document attorney work product. Plaintiffs assert that this is not consistent with the work product doctrine, which requires substantial probability of imminent litigation. Further, it is not consistent with APA review of the administrative record.

## II.   <u>Defendants' Opposition</u>

Defendants filed their memorandum in opposition on

March 28, 2008.  Defendants note that Plaintiffs did not meet and confer with them before filing the Motion, as required by Local Rule LR37.1(b).

   A.   **NMFS AR**

        Defendants submitted a declaration from James W. Balsiger, Acting Administrator for Fisheries of NMFS, which invokes the deliberative process privilege on behalf of the agency and the Department of Commerce.  It also provides a complete description of all of the documents contained in the NMFS Privilege Log and explains the precise harms which will occur unless the documents are kept confidential.  Defendants therefore assert that they have satisfied their burden of supporting the invocation of the deliberative process privilege.

        Plaintiffs rely on Greenpeace v. National Marine Fisheries Service to support their claim that the privilege does not apply to scientifically driven determinations.  Defendants argue that Greenpeace is an aberration which other courts in its circuit have rejected as overly narrow.  [Mem. in Opp. at 7 (citing Center for Biological Diversity v. Norton, 336 F. Supp. 2d 1149, 1152, 1155 (D.N.M. 2004); Center for Biological Diversity v. Norton, No. Civ. 01-409 TUC ACM, 2002 WL 32136200, at *2-4 (D. Ariz. 2002)).]  Defendants assert that, contrary to the assumption in Greenpeace, the exercise of scientific or technical judgment is not always black and white.  Scientific

10

decisions also develop over time and require free flowing communications and the open exchange of ideas among agency personnel, which is what the deliberative process privilege protects.

Defendants also argue that the privilege protects government decision making, not just policy making as asserted by Plaintiffs.  The plaintiffs in <u>Center for Biological Diversity (Arizona)</u> advanced the same argument Plaintiffs raise here and the court rejected the definition as too narrow.  Relying on <u>National Wildlife Federation v. United States Forest Service</u>, 861 F.2d 1114 (9th Cir. 1988), the court ruled that documents containing nonbinding recommendations on law or policy, as well as factual materials which reflected the decision makers' mental processes were exempt from disclosure.  Thus, to the extent that <u>Greenpeace</u> is based upon the assumption that the deliberative process privilege is limited to policy making, it is inconsistent with Ninth Circuit case law and should not be followed. Defendants argue that the critical issue is not whether the information sought is factual, but whether it would expose the agency's decision making process in such a way as to undermine the agency's ability to perform its duties.

In the present case, Defendants argue that the requested information reflects candid and frank communication between agency personnel which should be protected.  They

reiterate that the privilege applies where factual or scientific considerations are intertwined with policy considerations.  More importantly, in order for the agency to function properly, it needs to be free from the threat of publication of intra-agency dialogue.  Defendants argue that Plaintiffs have not established that their need for the materials and the need for accurate fact-finding outweigh the government's interest in nondisclosure.  The documents Plaintiffs seek are irrelevant because the district court must review the agencies' decision based on the record the agency provides.  Defendants contend that the existing record contains the documents necessary for court review and they state that they have redacted portions of privileged documents, rather than withholding the entire document, and will provide additional documents.  Defendants argue that, because the agencies' decisions are being challenged in this action, their interest in avoiding harm from disclosure of its decision-making process is at its highest.  They also assert that disclosure would hinder frank and independent staff discussions.

Defendants next argue that NMFS properly invoked the attorney-client privilege.  They argue that document numbers 15, 16, and 21 are confidential communications in which Pamela Lawrence, an attorney with the National Oceanic and Atmospheric Administration ("NOAA") General Counsel Office.  They discuss legal advice regarding, *inter alia*, a declaration to be used in

the instant case.  Document numbers 10 and 14 are confidential
communications between Johnson and Lawrence concerning legal
advice about the declaration and other matters related to this
litigation.  Defendants state that they will release document
number 19 to Plaintiffs.  Document numbers 12, 13, 17, 18, 20,
and 22 are e-mails between the United States Department of
Justice and NOAA General Counsel and/or Navy attorneys.  They
reflect legal advice sought by NMFS and the Navy and legal advice
given by the Department of Justice.  Document numbers 9 and 10
are a draft and attorney comments on a document, the final
version of which was made available to the public.  Defendant
argues that, for the reasons below, these fall within the
attorney-client privilege.

        Defendants also argue that NMFS has properly invoked
the work product doctrine.  Document numbers 15, 16, and 21 are
e-mail communications between Johnson and NOAA General Counsel
six months after Plaintiffs filed this case.  The e-mails contain
strings discussing the preparation of a declaration, the revision
of the BiOp, and litigation strategy.  Defendants argue that
there is no legal support for Plaintiffs' claim that the work
product doctrine does not apply because Plaintiffs are not
seeking discovery and Plaintiffs' argument is belied by the
administrative record cases they cite, such as Greenpeace
Foundation v. Mineta, which discuss the work product doctrine.

13

Regardless of the mechanism Plaintiffs are using to request the documents, they are improperly seeking counsel's mental impressions.

Defendants assert that an *in camera* review of the challenged documents is unnecessary because NMFS has demonstrated that the documents are protected by the deliberative process privilege, attorney-client privilege, and the work product doctrine.  If the Court believes that Defendants' Declaration of James Balsiger in Support of Asserted Administrative Record Privileges does not adequately establish that the documents are protected, Defendants assert that the Court should seek further information from NMFS before ordering an *in camera* review.  NMFS, however, will produce the documents for the Court's *in camera* review if the Court so requires.

Defendants also state that they intend to supplement the NMFS AR with additional materials, but they argue that they are not required to include every potentially relevant document in the record.  All that is required is that the record is sufficient to allow the Court to conduct a meaningful review of the agency's decision.

B.    **Navy AR**

Defendants argue that the Navy properly applied the attorney-client privilege and work product doctrine to its administrative record.  They note that the majority of the

14

challenged documents in the Navy AR are drafts of documents which were made public in their final form.  Defendants point out that the documents were not official drafts that were released to the public during the administrative process; they are incomplete drafts about which the Navy sought and obtained legal advice shortly before or during the instant action.  Defendants argue that Plaintiffs' abbreviated version of the Navy Privilege Log obscured the fact that the documents were transmitted to or from counsel for the purposes of legal advice.  Defendants have provided a complete Navy Privilege Log with revisions to the text of some entries.  [Exh. 3 to Mem. in Opp.]  Defendants argue that numerous courts have ruled that draft documents shared with counsel are protected under the attorney-client privilege.  [Mem. in Opp. at 26-27 (citing cases).]  Greenpeace Foundation v. Mineta is not consistent with the case law on the issue. Defendants argue that the cases relied upon in Greenpeace are distinguishable because the party asserting the privilege did not show that the communication regarding the drafts was intended to be confidential.  In contrast, the Navy Privilege Log establishes that the communications regarding the drafts were intended to be confidential.

Defendants also argue that the communication regarding the drafts is protected by the work product doctrine because the documents were prepared in the pendency of the case and reflect

15

case strategy and counsel's opinions.  Because the documents reflect opinion work product, Plaintiffs need to show that counsel's mental impressions are at issue and that there is a compelling need for the material.  Plaintiffs have not done so.

Plaintiffs argue that document numbers 762, 764, 765, and 766 are not privileged because they are communications between the Navy and third parties.  Defendants state that all of these were attached to a confidential October 1, 2007 e-mail from the Navy's legal counsel, Daniel Eldredge, to Neil Sheehan. Defendants argue that, while the underlying documents may not be privileged, the communication to which they are attached is privileged.  In addition, the fact that Navy counsel selected those documents for purposes of his legal advice is protected by the work product doctrine.  Defendants argue that the court should not order their disclosure because Plaintiffs have not established a need for the documents.  Defendants assert that there is an independent basis for the assertion of attorney-client privilege and work product protection for document number 763, which contains confidential briefing materials prepared by a Navy attorney for the Secretary of the Navy regarding compliance with the CZMA for training exercises in Southern California.  At the time, there was a worldwide challenge to the Navy's MFA sonar training and the Navy anticipated a lawsuit regarding the Southern California exercises.  The lawsuit was filed the

16

following month.

With regard to document numbers 261 and 420, the fact
that they were written prior to the filing of Plaintiffs'
Complaint does not preclude the application of the work product
doctrine.  The Natural Resources Defense Council and other groups
brought a 2005 suit challenging the Navy's use of MFA sonar
training worldwide, including in Hawaii.  It also brought suit
challenging the Navy's 2006 Rim of the Pacific training
exercises, and a March 2007 suit challenging exercises off the
coast of Southern California.  The Navy therefore anticipated an
additional lawsuit about the current USWEX.  In addition, the
2005 suit, which is still ongoing, encompasses the current USWEX.

Finally, Defendants argue that an *in camera* review of
the Navy documents is not necessary because they have proven that
the documents are privileged.  Defendants will, however, produce
the challenged documents for the Court's *in camera* review if the
Court so desires.

C.   **Plaintiffs' Reply**

Plaintiffs filed their reply on April 4, 2008.
Plaintiffs first argue that Local Rule LR37.1(b) does not apply
in this case because they are not seeking discovery.  They also
note that the Navy's supplemental administrative record only
added two of the fifty-four documents which are the subject of
the instant Motion.  The additional documents, the final drafts

17

of the Navy's Negative Determination and EA, are not relevant because they are actually post-record documents.

Even if the Court applies the <u>Norton</u> cases, the Court would still have to address whether Plaintiffs' need for the documents outweighed the agencies' interest in concealing them. In the two <u>Norton</u> cases, the disputed documents were arguably of little assistance because the existing administrative records were extensive.  That is not the case here.

Plaintiffs reiterate that the Court should apply Judge King's attorney-client privilege analysis from <u>Greenpeace Foundation v. Mineta</u>.  They note that Defendants did not provide a substantial basis why the Court should reject <u>Greenpeace Foundation v. Mineta</u> and apply the contrary cases.  Plaintiffs stress that the attorney-client privilege is strictly construed and that Defendants have the burden of proving that it applies to each document they seek to protect.

Plaintiffs argue that Defendants were required by law to prepare the drafts of the BiOps and the EAs and these documents were subsequently released to the public.  The documents therefore cannot contain confidential information; they are only the discussion of science.  Defendants cannot show that they intended these documents to remain confidential and therefore the attorney-client privilege does not apply.  Even if they did intend to keep the documents confidential, there is no

18

legitimate basis for this intent.  Defendants may have included or excluded language in the BiOps and EAs because it would be helpful in litigation.  Plaintiffs and the district court are entitled to know what was left out for strategic reasons. Plaintiffs argue that Defendants' claim that unprivileged documents became privileged because they were attached to communications with counsel is not supported by the established law, including Greenpeace Foundation v. Mineta.

With regard to the work product doctrine, Plaintiffs note that Defendants have not cited any cases supporting their claim that documents can be attorney work product if created because litigation is possible in light of prior challenges to similar agency actions.  Particular litigation must be imminent and the document must have been created because of that litigation.  Although the Navy may have had general litigation concerns when it created document numbers 261 and 420, there is no indication that the Navy would not have created those documents absent the threat of litigation.  Plaintiffs argue that adopting Defendants' argument would allow agencies to routinely conceal their decision making processes and would eviscerate APA review.  Further, although the Navy revised its EA after the filing of the Complaint in an attempt to render Plaintiffs' pending claims moot, the draft documents were not created primarily for use in litigation and therefore is not attorney

19

work product.

Finally, Plaintiffs reiterate that, even if the work product doctrine applies, it may be overcome upon the demonstration of substantial need or inability to obtain equivalent evidence without undue hardship.  There is no alternative source for the challenged documents in this case and the documents are necessary for court review of the entire record.

The Motion came on for hearing on April 15, 2008.  The parties appeared and were given guidance as to the types of documents which the court would and would not likely uphold the privileges being raised, and were directed to meet and confer to resolve their differences.  For the unresolved disputes, Defendants were to submit the documents for *in camera* review with a revised privilege log by April 29, 2008.

On April 24, 2008, Defendants filed an *ex parte* application to extend the time to submit documents for *in camera* review and this application was granted, over Plaintiffs' objections.  Documents were received for *in camera* review on April 29, 2008,[4] and the remainder was received on May 13, 2008.[5]

---

[4]  These documents are identified as bates-stamped numbers 178A-178F, 179-185, 186-188189-191, 192-293, 294-296, 403-405406-407, 408, 409, 410-411, 412, 413-415, 417-419.

[5]  This production consists of eight 3-ring binders of documents identified by bates-stamped numbers 25402-28569.

20

In general, Defendants have withheld or partially withheld production of the documents submitted for *in camera* review on the basis of attorney-client privilege and/or work product doctrine, and deliberative process privilege.

Given the voluminous nature of the documents submitted for *in camera* review, the Court will issue its findings on a "rolling" basis; that is, it will issue serial rulings on batches of documents to permit the parties to commence production of documents earlier, rather than waiting until the Court completes the entire review.

**STANDARD**

I.   **APA Review**

> Agency decisions are reviewed under the Administrative Procedure Act ("APA") and may be set aside if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).  This is a deferential standard and courts must presume that an agency action is valid. <u>Sierra Club v. Marsh</u>, 976 F.2d 763, 769 (1st Cir. 1992).  The relevant inquiry is whether the agency "considered the relevant factors and articulated a rational connection between the facts found and the choice made." <u>Pyramid Lake Paiute Tribe v. U.S. Dep't of Navy</u>, 898 F[.]2d 1410, 1414 (9th Cir. 1990) (citation omitted).

[Preliminary Injunction Order at 19.]

"Generally, judicial review of agency action is limited to review of the record on which the administrative decision was based." <u>Thompson v. United States Dep't of Labor</u>, 885 F.2d 551, 555 (9th Cir. 1989) (citing <u>Citizens to Preserve Overton Park v.</u>

<u>Volpe</u>, 401 U.S. 402, 420 (1971)).   The court typically reviews

the administrative record that the agency presents for review.

See <u>Florida Power & Light Co. v. Lorion</u>, 470 U.S. 729, 743-44

(1985).   "The whole administrative record, however, is not

necessarily those documents that the *agency* has compiled and

submitted as 'the' administrative record.   The 'whole'

administrative record, therefore, consists of all documents and

materials directly or *indirectly* considered by agency

decision-makers and includes evidence contrary to the agency's

position."   <u>Thompson</u>, 885 F.2d at 555 (citations and some

quotation marks omitted) (emphases in original).

The district judge previously ruled on a discovery

request Plaintiffs submitted in connection with the motion for

preliminary injunction.   In granting the request, the district

judge stated:

> There are numerous exceptions, however, to
> this administrative records rule, including but
> not limited to: (1) when agency action is not
> adequately explained in the record before the
> court; (2) when a case is so complex that a court
> needs more evidence to enable it to understand the
> issues clearly; (3) in cases arising under the
> National Environmental Policy Act ("NEPA"); and
> (4) in cases where relief is at issue, especially
> at the preliminary injunction stage.   <u>Esch v.
> Yeutter</u>, 876 F.2d 976, 991 (D.C. Cir. 1989).   All
> four of these exceptions are present here.

[Order Granting Pltfs.' Discovery Request, filed Jan. 18, 2008,

at 10.]

22

## II.  **Deliberative Process Privilege**

The purpose of the deliberative process privilege is "'to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny.'"[6] Carter v. United States Dep't of Commerce, 307 F.3d 1084, 1089 (9th Cir. 2002) (quoting Assembly of Cal. v. United States Dep't of Commerce ("Assembly"), 968 F.2d 916, 920 (9th Cir. 1992)) (some citations omitted).  In other words, it ensures that government agencies do not have to operate in a fishbowl. See id. at 1090.  The privilege protects "'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  Id. at 1089 (quoting Dep't of Interior v. Klamath Water Users Protective Assoc., 532 U.S. 1, 8 (2001)).

A document falls within the deliberative process privilege if it is predecisional and deliberative.  See id.

> "A predecisional document is one prepared in order to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other

---

[6] Exemption 5 of the FIOA permits nondisclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Exemption 5 protects "those documents, and only those documents, normally privileged in the civil discovery context."  N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975).  Thus, the deliberative process privilege is included in Exemption 5.  See Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001).

> subjective documents which reflect the personal
> opinions of the writer rather than the policy of
> the agency.  A predecisional document is a part of
> the deliberative process, if the disclosure of
> [the] materials would expose an agency's
> decisionmaking process in such a way as to
> discourage candid discussion within the agency and
> thereby undermine the agency's ability to perform
> its functions."

Id. (quoting Assembly, 968 F.2d at 920) (some citations and quotation marks omitted) (alteration in original).  Factual information that is included in a document containing predecisional and deliberative material is not protected if the factual material is severable.  See In re Grand Jury, 821 F.2d 946, 959 (3d Cir. 1987) (citing EPA v. Mink, 410 U.S. 73, 88-91 (1973)).

The deliberative process privilege, however, is a qualified privilege.  See F.T.C. v. Warner Commc'ns Inc., 742 F.2d 1156, 1161 (9th Cir. 1984).  A litigant may overcome the privilege if his need for the materials and the interest in accurate fact-finding outweighs the government's interest in non-disclosure.  See id.  Among the factors courts may consider in making this determination are: "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions[;]" see id. (citations omitted); "5) the interest of the litigant, and ultimately society, in accurate

24

judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law." North Pacifica, LLC v. City of Pacifica, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003) (citation omitted).

A court need not conduct an *in camera* review of documents withheld on the basis of the deliberative process privilege if the agency provides "'reasonably detailed descriptions of the documents and allege[s] facts sufficient to establish an exemption.'" Ctr. for Biological Diversity v. Norton, 336 F. Supp. 2d 1149, 1155 n.4 (D.N.M. 2004) (quoting Maricopa Audubon Soc. v. United States Forest Service, 108 F.3d 1089, 1092 (9th Cir. 1997)) (alteration in original).

III. **Attorney-Client Privilege**

The attorney-client privilege protects a client's confidential communications to an attorney to obtain legal services.  Courts apply the privilege only when necessary to achieve a client's full and frank disclosure to his attorney. The party asserting the privilege bears the burden of establishing that it applies to the documentation, etc., sought by the opposing party.  See Clarke v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992).  "Blanket assertions are extremely disfavored." United States v. Martin, 278 F.3d 988,

25

1000 (9th Cir. 2002) (citation omitted).  The elements of the privilege are:

> (1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived.

Id. at 999 (citing 8 Wigmore, Evidence § 2292, at 554 (McNaughton rev. 1961); United States v. Plache, 913 F.2d 1375, 1379 n. 1 (9th Cir. 1990)).

## IV.  Work Product Doctrine

The work product doctrine provides a qualified immunity for material prepared in anticipation of litigation by a party or its representative.  See Hickman v. Taylor, 329 U.S. 495 (1947). In order to be protected under the work product doctrine, the material must meet the following conditions: (1) be a document or tangible thing; (2) be prepared in anticipation of litigation or for trial; and (3) be prepared by or for a party, or by or for its representative.  See Fed. R. Civ. P. 26(b)(3)(A).  The burden of establishing work product protection lies with the proponent, and "it must be specifically raised and demonstrated rather than asserted in a blanket fashion."  Yurick v. Liberty Mut. Ins. Co., 201 F.R.D. 465, 472 (D. Ariz. 2001) (citations omitted).

There are two types of work product: fact work product, "written or oral information transmitted to the attorney and

recorded as conveyed by the client"; and opinion work product, "any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories." In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289, 294 (6th Cir. 2002) (citations and quotation marks omitted). The protection accorded fact work product can be pierced where the opposing party can demonstrate a substantial need for the information and that she cannot otherwise obtain the substantial equivalent of the work product without undue hardship. See Rule 26(b)(3)(A)(ii). Opinion work product, however, is afforded greater protection. See Rule 26(b)(3)(B) ("If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other legal representative concerning the litigation.").

The Ninth Circuit has held that a document is prepared "in anticipation of litigation" if it was prepared or obtained because of the prospect of litigation. The court specifically stated that the "'because of' standard does not consider whether litigation was a primary or secondary motive behind the creation of the document." In re Grand Jury Subpoena, 357 F.3d 900, 908 (9th Cir. 2004). Where both purposes are inter-mixed, the documents are accorded protection if, "taking into account the facts surrounding their creation, their litigation purpose so

27

permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole." Id. at 910.

To meet the requirement that the document was "prepared in anticipation of litigation", the proponent needs to demonstrate, first, that there was some threat of an adversarial proceeding, and second, that the document was prepared after that threat became apparent. See F.T.C. v. Grolier Inc., 462 U.S. 19, 25 (1983) ("But the literal language of the Rule protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation." (citation omitted) (emphasis in original)).

"Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes" do not fall within the ambit of the work product doctrine. Fed. R. Civ. P. 26(b)(3) advisory committee's note (1970 Amendment).

**DISCUSSION**

I.   **Deliberative Process Privilege**

Courts have differed as to the definition of "deliberative process" in the context of documents generated by an agency as part of its administrative record in environmental matters. Compare, e.g., Greenpeace v. Nat'l Marine Fisheries Serv., 198 F.R.D. 540 (W.D. Wash. 2000), and Greenpeace

<u>Foundation v. Mineta</u> <u>with</u> <u>Ctr. for Biological Diversity v.</u> <u>Norton</u>, No. Civ. 01-409 TUC ACM, 2002 WL 32136200 (D. Ariz. July 24, 2002) (concluding that defining deliberative to focus only on policy decisions was too narrow), <u>and</u> <u>Ctr, for Biological Diversity v. Norton</u>, 336 F. Supp. 2d 1149 (D.N.M. 2004) (concluding that the <u>Greenpeace v. NMFS</u> definition of deliberative process is unduly narrow).

Plaintiffs urge this Court to adopt <u>Greenpeace v. NMFS</u> and <u>Greenpeace Foundation v. Mineta</u> over <u>Center for Biological Diversity (New Mexico)</u> and <u>Center for Biological Diversity (Arizona)</u> because the <u>Center for Biological Diversity</u> cases were not Section 7 cases and they did not contain a detailed discussion of the privileges and the agency processes.  According to Plaintiffs, the <u>Center for Biological Diversity</u> cases (although they have the same name, the cases are unrelated) relied on the description of the deliberative process privilege in <u>F.T.C. v. Warner Communications, Inc.</u>, 742 F.2d 1156 (9th Cir. 1984), and did not address the Ninth Circuit's subsequent decision in <u>National Wildlife Federation v. United States Forest Service</u>, 861 F.2d 1114.[7]  In <u>National Wildlife Federation</u>, the Ninth Circuit emphasized that the deliberative process privilege is implicated by the creation of agency policy.  Facts are exempt

---

[7] The Court notes that <u>Center for Biological Diversity (Arizona)</u> does discuss <u>National Wildlife Federation</u>.  <u>See</u> 2002 WL 32136200, at *3.

if they are inextricably intertwined with the policy making process.  Plaintiffs stress that there is no policy decision in NMFS's analysis of the impact of the USWEX on listed species. Congress made the policy decision that the protection of endangered species is given the highest priority.  This Court disagrees.

At the heart of the deliberative process privilege is the recognition that candid discussions should be held within an agency.  This Court finds that Center for Biological Diversity v. Norton, 336 F. Supp. 2d 1149 (D.N.M. 2004), sets forth the better approach.  There is no reasonable basis to refrain from applying the same analysis here because it did not involve a Section 7 case.

Center for Biological Diversity v. Norton (New Mexico) addressed the plaintiffs' motion to supplement the administrative record with withheld documents in a suit challenging the decision not to list the Rio Grande cutthroat trout as a threatened or endangered species under Section 4 of the ESA and its implementing regulations.  The court concluded that "the Greenpeace definition of 'deliberative process' is unduly narrow[8] and ignores numerous cases holding that the

---

[8]  Sierra Club v. Kempthorne, 488 F. Supp. 2d 1188 (S.D. Ala. 2007), also criticized Greenpeace.  It noted that Greenpeace depended upon the doubtful assumptions that the deliberative process privilege only applied to policy determinations and that
(continued...)

deliberative process privilege applies to the process for formulating government 'decisions' as well as government 'policies'." <u>Center for Biological Diversity</u>, 336 F. Supp. 2d at 1152 (citing <u>Dep't. of Interior v. Klamath Water Users Protective Ass'n.</u>, 532 U.S. 1, 8-9, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001) ("deliberative process [privilege] covers 'documents reflecting advisory opinions, recommendations and deliberations <u>comprising part of a process by which governmental decisions and policies are formulated</u>'") (emphasis added) (quoting <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29(1975)); <u>Casad v. United States Dep't. of Health and Human Services</u>, 301 F.3d 1247 (10th Cir. 2002) (applying deliberative process privilege to documents related to government decision to deny training grant)).  The court found <u>Center for Biological Diversity v. Norton (Arizona)</u> to be more persuasive and ruled that documents related to the listing decision were eligible for protection under the deliberative process privilege.  <u>See</u> <u>id.</u> at 1153.

The court ruled that the challenged documents "were

------

⁸(...continued)
neither the jeopardy determination nor the decisions flowing therefrom were policy decisions.  <u>See</u> <u>Sierra Club</u>, 488 F. Supp. 2d at 1191. Other courts, however, have cited <u>Greenpeace v. NMFS</u>, 198 F.R.D. 540, 543 (W.D. Wash. 2000), for its limitation of the term "deliberative" to the policy-making process.  <u>See</u>, <u>e.g.</u>, <u>Modesto Irrigation Dist. v. Gutierrez</u>, No. 1:06-cv-00453 OWW DLB, 2007 WL 763370, at *5 (E.D. Cal. March 9, 2007).

pre-decisional because they consist of communications between and among agency personnel containing their opinions, recommendations and deliberations concerning the listing decision prepared to assist the agency decision-maker in arriving at the listing decision[,]" and they "were deliberative because they were generated as part of the deliberative process by which the listing decision was made and their disclosure to the public would expose that process in a way to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Id. at 1154.   The court weighed the relevant factors and concluded that the documents should remain confidential.   See id.   This Court accordingly will apply the same deliberative process privilege analysis in its *in camera* review of the documents.

B.   **Attorney-Client Privilege**

Plaintiffs also cite Greenpeace Foundation v. Mineta for its ruling that "[p]reliminary drafts of documents intended to be disclosed to third parties (e.g., an environmental assessment, FMP) are not protected by the attorney-client privilege." [Exh. 2 to Achitoff Decl. at 4-5 (citing cases).] The district judge ruled that the privilege did not apply to a document containing NOAA general counsel's comments and opinions on a draft Environmental Assessment/Designation of Critical Habitat for the Hawaiian monk seal or to a document consisting of

32

an attorney's legal review of a Fishery Management Plan.  The
district judge, however, based this ruling on the defendants'
failure to carry its burden of proving that the communications
contained in the documents were excluded from the final, public
versions of the documents.  [Id. at 5 (citing United States
Postal Serv. v. Phelps Dodge Ref. Corp., 852 F. Supp. 156, 163
(E.D.N.Y. 1994); North Carolina Elec. Membership Corp. v.
Carolina Power & Light Co., 110 F.R.D. 511, 517 (M.D.N.C.
1986)).]  Counsel's legal advice given together with draft
comments, however, was deemed privileged.  [Id. at 8 ("In the
memorandum, NOAA's general counsel comments on an FMP and
discloses legal advice given to NMFS regarding the designation of
critical habitat.  The disclosure of legal advice to NMFS is
privileged; the remaining portions of the memorandum are not.").]
This Court will apply the same attorney-client analysis in its *in
camera* review of the documents.

###	C.	**Work Product Doctrine**

At its core, the work product doctrine protects the
mental processes of the attorney from disclosure.  Documents
prepared by an attorney or at his or her direction, including the
work product generated by agents, such as investigators working
for attorneys, are thus shielded from disclosure as long as the
documents were created in anticipation of litigation.  See,
United States v. Nobles, 422 U.S. 225, 238-39 (1975) ("It is

33

therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself."). Disclosure to a third party does not necessarily destroy the work product immunity. The purpose and extent of the disclosure must first be scrutinized to determine whether a waiver has occurred:

> Although the qualified immunity afforded to work product may be waived, the waiver doctrine does not apply in the same manner to work product as it does in the context of the attorney-client privilege. Any disclosure of privileged information to third parties generally results in a waiver of the attorney-client privilege. On the other hand, the work product protection is waived only when protected materials are disclosed in a manner which "substantially increases the opportunity for potential adversaries to obtain the information."

Martin v. Monfort, Inc., 150 F.R.D. 172, 174 (D. Colo. 1993) (citing Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp., 125 F.R.D. 578 (N.D.N.Y. 1989); In re Grand Jury Subpoenas, 561 F.Supp. 1247, 1257 (E.D.N.Y. 1982)). Several courts have concluded that voluntary disclosure to an investigatory body results in the waiver of work product protection. See, e.g., In re Worlds of Wonder Sec. Litig., 147 F.R.D. 208, 211-12 (N.D. Cal. 1992) (concluding that voluntary disclosure to SEC waives privilege); but see In re Steinhardt Partners, L.P., 9 F.3d 230, 236 (2d Cir. 1993) (declining to adopt rule that all voluntary disclosures to the government waive work product protection and holding that waiver must be

determined on a case-by-case basis).  "The work product privilege may be waived through disclosure of the documents, if the disclosure of work 'substantially increase the possibility that an opposing party could obtain the information.'"  <u>Ideal Elec. Co. v. Flowserve Corp.</u>, 230 F.R.D. 603, 609 (D. Nev. 2005) (finding instructive cases holding that disclosure of interrogatory answers does not waive the work product privilege that covers the drafts of these responses) (citations omitted); <u>see also</u> <u>Hollinger Int'l, Inc. v. Hollinger Inc.</u>, 230 F.R.D. 508, 517-18 (N.D. Ill. 2005) (finding that work product protection was not waived as to drafts of Special Committee Report prepared prior to public filing of the report with the Securities Exchange Commission).

The Court concludes that certain documents were prepared in anticipation of litigation because Defendants have been sued in the past few years on the same or similar type of program.  <u>See</u> Mem. in Opp. at 31 (citing cases).  Further, the fact that there are drafts of the final report does not, by itself, waive the work product doctrine as to the contents of the drafts.  <u>See</u> <u>Ideal Elec.</u>, 230 F.R.D. at 609.

## <u>**FINDINGS**</u>

After an *in camera* review of the documents submitted, the Court makes the following findings:

| NFS Doc. #[9] | Bates # | Privilege |
|---|---|---|
| 5 | 178A-178F | Deliberative Process |

The privilege is upheld, and the Court finds that the contents for which the privilege was claimed are both predecisional and deliberative.

| NFS Doc. # | Bates # | Privilege |
|---|---|---|
| 6 | 179-185 | Deliberative Process |

The redactions should be produced.  The Court finds that the contents for which the privilege was claimed are not deliberative, and contains purely factual information.

| NFS Doc. # | Bates # | Privilege |
|---|---|---|
| 7 | 186-188 | Deliberative Process |

The privilege is upheld, and the Court finds that the contents for which the privilege was claimed are both predecisional and deliberative, and that the contents contain self-critical analysis and discussion.

| NFS Doc. # | Bates # | Privilege |
|---|---|---|
| 8 | 189-191 | Deliberative Process |

The privilege is upheld, and the Court finds that the contents for which the privilege was claimed are both predecisional and deliberative, and that the contents contain self-critical analysis and discussion.

---

[9] There were no documents submitted which were numbered 1-4. [Defs.' Privilege Log, Revised April 29, 2008.]

36

| NFS Doc. # | Bates # | Privilege |
|---|---|---|
| 9 | 192-293 | Deliberative Process and Attorney-Client |

The redactions should be produced.  The Court finds that the contents for which the deliberative process privilege was claimed are not deliberative, and contain purely factual information. Further, the attorney-client privilege is not applicable because Defendants have not shown that legal advice was sought and/or given.

| NFS Doc. # | Bates # | Privilege |
|---|---|---|
| 10 | 294-296 | Deliberative Process and Attorney-Client |

The privilege is upheld, and the Court finds that the contents for which the privilege was claimed are both predecisional and deliberative, and that the contents contain self-critical analysis and discussion.  However, the attorney-client privilege is not applicable because Defendants have not shown that legal advice was sought and/or given.

| NFS Doc. # | Bates # | Privilege |
|---|---|---|
| 11 | NONE | - |

| NFS Doc. # | Bates # | Privilege |
|---|---|---|
| 12 | 403-405 | Deliberative Process, Attorney-Client and Work Product |

The redactions should be produced.  The Court finds that the contents for which the deliberative process privilege was claimed

37

are not deliberative, and contain purely factual information.

Further, neither the attorney-client privilege nor the work

product doctrine apply because Defendants have not shown that

legal advice was sought and/or given, or that the document

contains an attorney's mental impressions.  Rather the

information contained in the redactions consists of facts.

| NFS Doc. # | Bates # | Privilege |
|---|---|---|
| 13 | 406-407 | Deliberative Process and Work Product |

The deliberative process privilege is upheld, and the Court finds

that the contents for which the privilege was claimed are both

predecisional and deliberative, and that the contents contain

self-critical analysis and discussion.  The work product doctrine

is also applicable in that the document contains an attorney's

mental impressions.

| NFS Doc. # | Bates # | Privilege |
|---|---|---|
| 14 | 408 | Deliberative Process, Attorney-Client and Work Product |

Both the attorney-client privilege and work product doctrine are

applicable, and these privileges are upheld.  The document

contains legal advice as well as an attorney's legal strategy.

The deliberative process privilege is not applicable as the

contents are not deliberative as the document relates to an on-

going litigation and not to the creation of an agency's policies.

| NFS Doc. # | Bates # | Privilege |
|---|---|---|
| 15 | 409 | Deliberative Process, and Work Product |

The redactions should be produced.  The Court finds that the contents for which the deliberative process privilege was claimed are not deliberative, and contain purely factual information. Further, the work product doctrine is not applicable because the document does not contain an attorney's mental impressions. Rather the information contained in the redactions consists of facts.

| NFS Doc. # | Bates # | Privilege |
|---|---|---|
| 16 | 410-411 | Deliberative Process, and Work Product |

The redactions should be produced.  The Court finds that the contents for which the deliberative process privilege was claimed are not deliberative, and contain purely factual information. Further, the work product doctrine is not applicable because the document does not contain an attorney's mental impressions or legal strategies.  Rather the information contained in the redactions consists of facts.

| NFS Doc. # | Bates # | Privilege |
|---|---|---|
| 17 | 412 | Deliberative Process, Attorney-Client and Work Product |

The redactions should be produced.  The Court finds that the contents for which the deliberative process privilege was claimed

are not deliberative, and contain purely factual information. The attorney-client privilege and work product doctrine are not applicable because Defendants have not shown that legal advice was sought and/or given, or that the document contains an attorney's mental impressions or legal strategies.  Rather the information contained in the redactions consists of facts.

| NFS Doc. # | Bates # | Privilege |
|---|---|---|
| 18 | 413-415 | Deliberative Process, Attorney-Client and Work Product |

The redactions should be produced.  The Court finds that the contents for which the deliberative process privilege was claimed are not deliberative, and contain purely factual information along the lines of editorial changes or clarifications.  The attorney-client privilege and work product doctrine are not applicable because Defendants have not shown that legal advice was sought and/or given, or that the document contains an attorney's mental impressions or legal strategies.  Rather the information contained in the redactions consists of facts and/or factual clarifications.

| NFS Doc. # | Bates # | Privilege |
|---|---|---|
| 19 | NONE | - |

| NFS Doc. # | Bates # | Privilege |
|---|---|---|
| 20 | 417-419 | Deliberative Process, Attorney-Client and Work Product |

The redactions should be produced.  The Court finds that the contents for which the deliberative process privilege was claimed are not deliberative, and contain purely factual information along the lines of editorial changes or clarifications.  The attorney-client privilege and work product doctrine are not applicable because Defendants have not shown that legal advice was sought and/or given, nor that the document contains an attorney's mental impressions or legal strategies.  Rather the information contained in the redactions consists of facts and/or factual clarifications.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS the Motion to the extent that Defendants are hereby ordered to produce the following documents to Plaintiffs **by June 10, 2008.**

| NFS Doc. # | Bates # |
|------------|---------|
| 6 | 179-185 |
| 9 | 192-293 |
| 12 | 403-405 |
| 15 | 409 |
| 16 | 410-411 |
| 17 | 412 |
| 18 | 413-15 |
| 20 | 417-19 |

The Clerk's Office is hereby directed to file, under

41

seal, the documents submitted for *in camera* review, along with the Privilege Log, Revised April 29, 2008.

**IT IS SO ORDERED.**

DATED AT HONOLULU, HAWAII, May 27, 2008.



  /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

OCEAN MAMMAL INSTITUTE, ET AL. V. ROBERT M. GATES, ETC., ET AL; CIVIL NO. 07-00254 DAE-LEK; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL COMPLETION OF ADMINISTRATIVE RECORD, FILED MARCH 4, 2008